UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MYRA T. PLUMMER,
<u>Plaintiff-Appellant,</u>

v.

J. CURTIS FRUIT, Individually and in

his capacity as Clerk of the Circuit
Court of the City of Virginia Beach,
Virginia,
<u>Defendant-Appellee.</u>

No. 98-1323

Appeal from the United States District Court
for the Eastern District of Virginia at Norfolk.
William T. Prince, Magistrate Judge.
(CA-97-203-2)

Argued: March 1, 1999

Decided: March 24, 1999

Before ERVIN, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Harrell Shoemaker, Jr., PATTEN, WORNOM &
WATKINS, L.C., Newport News, Virginia, for Appellant. Abram
William VanderMeer, Jr., CLARK & STANT, P.C., Virginia Beach,
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this Title VII case, the district court entered judgment as a mat-
ter of law in favor of the defendant. We affirm.

I.

In 1987, William Fruit, the Clerk of the Circuit Court of Virginia
Beach, hired Myra T. Plummer as a general office clerk. In July 1991,
Fruit promoted Plummer to courtroom clerk. In January 1994, Plum-
mer met with Fruit to complain about her salary and showed him a
draft letter to the Virginia Compensation Board, which suggested that
her race (African-American) might be the reason she was paid less
than other courtroom clerks. Plummer asserts that Fruit was livid at
this suggestion; he concedes he was hurt and insulted. Plummer
claims that Fruit subsequently discharged her in retaliation for this
complaint. Fruit maintains that he discharged her because of an array
of legitimate job-related reasons, noting that he had personally pro-
moted her to Deputy Clerk I several months after her complaints and
a year prior to firing her.

The evidence at trial clearly established that Plummer's record as
an employee was not exemplary. She was written up for numerous
infractions between 1989 and 1995 and was absent from work 34
days in 1994 and 66 days in 1995. Moreover, in October 1995, Fruit
received an envelope bearing his office's return address mailed to one
Ida Thompson, but returned by the post office as undeliverable. Inside
the envelope were several copies of a "Letter from Jesus" and a post-
it note "from Mitch." When questioned by Fruit, Plummer denied any
knowledge of the letter. Shortly thereafter, Fruit received another
returned letter addressed to Ida Thompson. There was strong evidence
that Plummer had sent the second letter. Convinced that she had writ-
ten the first letter as well (and lied to him about it), Fruit fired Plum-
mer.

2

In a December 6, 1995 letter, he informed Plummer of the discharge. Fruit's letter to Plummer sets out four reasons for her termination:

> (1) Fruit lost faith in Plummer after he reasonably concluded that she sent both letters to Ida Thompson and lied to him;

> (2) He reviewed her file and found an incident in which she was caught lying to the chief deputy clerk;

> (3) Earlier in 1995, she had violated the office policy against using the copying machine for personal use; and

> (4) Her continued problem with absenteeism.

The district court found that Fruit stated legitimate, non-discriminatory reasons for the discharge and that Plummer had failed to demonstrate that these reasons were pretextual. Accordingly, the court granted Fruit's motion for judgment as a matter of law at the conclusion of all of the evidence.

II.

On appeal, Plummer launches a many-pronged attack.

First, she focusses on the incidents listed in the termination letter in isolation and points to evidence that other "similarly situated" white employees were not terminated for like behavior and violations. However, even though other employees made copies for personal use on the office machines or lied to Fruit on occasion, Plummer offered no evidence that any employee had a disciplinary record similar to hers. Furthermore, some of the "similarly situated" employees that were not disciplined as harshly as Plummer were people of color.

Second, Plummer also asserts that Fruit's performance evaluations of her and two letters of public recognition for her outstanding work demonstrated the pretextual nature of the termination. Fruit's perfor-

3

mance evaluations of Plummer range from average to slightly better than average; they do not render his ultimate discharge of her pretextual. Furthermore, although Plummer was commended in two letters of praise, she received far more verbal and written complaints. See, e.g., J.A. 392, 394, 396-98, 399, 400, 401, 402, 403, 404, 405-06, 407, 408-09.

Finally, Plummer claims that Fruit's reasons for termination in the letter differ from the reasons he gave at trial. See Alvarado v. Board of Trustees, 128 F.3d 118, 122 (4th Cir. 1991). The termination letter stated that it was to provide a "full explanation" for her termination. Plummer asserts that at trial Fruit testified to infractions over eight years that were not mentioned in the termination letter. The difficulty with this argument is that even if we ignore all of Plummer's failings except for those set forth in the termination letter, these stated reasons amply provide a non-discriminatory, non-pretexual basis for the discharge.

III.

For all of the reasons set forth above and those stated by the district court, the judgment of the district court is

AFFIRMED.

4